UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 16-CIV-10015—MARTINEZ/GOODMAN

ASHLEY MANSEL, MONIC BAILEY, and CONNIE IDGAF,
on behalf of themselves and all others similarly situated,

        Plaintiff,

*v.*

GLENTEX, INC. d/b/a WOODY'S,
a Florida Corporation, and MICHAEL PINTER, JR.,
an Individual,

        Defendant.

_____/

## PLAINTIFFS' VERIFIED MOTION FOR ATTORNEYS' FEES AND  INCORPORATED MEMORANDUM OF LAW

Pursuant to Fed.R.Civ.P. 54(d) and S.D.L.R. 7.3, Plaintiffs hereby move for Attorneys'

Fees against Defendants, GLENTEX, INC. d/b/a WOODY'S ("WOODY'S"), and MICHAEL

PINTER, JR. ("PINTER") following the entry of a Final Judgment in Plaintiffs' favor in this

FLSA case.  On the eve of trial (after the conclusion of discovery, summary judgment briefing,

motions in limine, and the completion of the Court's pretrial order deadlines), Plaintiffs accepted

Proposals for Settlement, thereby making them prevailing parties in this action.  As supported by

the time records attached as Exhibits 1 and 2, the voluntary time reductions the undersigned

implemented before filing this request for fees as reflected in Exhibit 3, and the supporting

affidavit and declaration by Plaintiffs' counsel attached as part of Exhibits 1 and 2, Plaintiffs'

respectfully request a total award of $137,885.00 for prevailing party fees in this case.[1]   The

factual and legal grounds supporting this request are set forth more fully below.

---

[1] Plaintiffs filed a separate Motion for Costs [D.E. #127], which was granted. [D.E. #128].

## I.      PRELIMINARY STATEMENT

On April 5, 2016, Plaintiffs filed a Complaint against WOODY'S to recover minimum wage compensation and other damages, including liquidated damages and attorneys' fees and costs, pursuant to the Fair Labor Standards Act, as amended ("FLSA" 29 U.S.C. §201 et. seq.). Subsequently, the Plaintiffs amended the Complaint to include Defendant PINTER and also added a count for minimum wages pursuant to the Florida Minimum Wage Act (the "FMWA").

This case ultimately resulted in Final Judgment being entered on March 6, 2017 [D.E. #126] in favor of four exotic dancers (the Plaintiffs), with one other dancer accepting a prior Proposal of Settlement on August 24, 2016 [D.E. #58].  The total amount of recovery for all dancers was $31,540.00 to be paid by Defendants, an adult entertainment club named "WOODY'S" and its owner, PINTER (the "Defendants").  Throughout this case and prior to Final Judgment being entered, the Plaintiffs faced numerous obstacles based upon Defendants repeatedly changing their defenses and theories of the case in response to the asserted claims.

For example, the Defendants argued at different stages of the litigation that: (1) the Defendants have accurate pay records proving all hours worked (they did not); (2) the Plaintiffs were commissioned employees; (3) the Plaintiffs were paid via a tip-credit, to which Plaintiffs all allegedly received proper notice (despite the absence of documents demonstrating same); (4) the Plaintiffs were paid from a service charge in lieu of a tip; and (5) the Plaintiffs were paid via purported "cash advances" to Plaintiffs to satisfy Defendants' wage liabilities.  Each of these complicated and convoluted defenses was thoroughly litigated and ultimately exposed as inaccurate and/or unsupported during the discovery process after the required fact-intensive investigation and evaluation of Defendants' "moving target" defense strategy in this case. Uncovering that (a) the Defendants maintained fabricated time records for the Plaintiffs, (b) said

records maintained were admittedly false, materially inaccurate, and inputted by the Defendants without respect to actual time worked, (c) the Plaintiffs were never properly notified of the tip-credit, (d) the Plaintiffs were forced to share tips with non-tipped employees (bouncers), (e) the Plaintiffs never received any commissions from the Defendants, (f) Defendants' claimed cash advances to Plaintiffs (a vehicle Defendants used to create the appearance of paying certain wages) were falsely documented as being paid to the Plaintiffs, and (g) the Plaintiffs' dances were not service charges, took substantial time and effort on the part of the Plaintiffs' counsel. See generally, e.g., D.E.s 76, 77, 78, 86, 87, 88, 89, 98, 99, 100, 106, 107, 113, and 115.

Making matters more complicated was that this lawsuit was the first undersigned counsel is aware of to address a scenario where the Defendants claimed that the Plaintiff dancers are W-2 employees (not independent contractors), which raised a unique combination of issues involving (1) the number of hours actually worked, (2) tip-pooling under the FLSA, (3) tip-credit notice under the FLSA, (4) commissions under the FLSA; and (5) purported cash advances which were reflected in certain time records but not actually paid to Plaintiffs.   After eleven months of hotly contested litigation, seven depositions, thorough cross-motions for summary judgment (and responses and replies on both sides), proposed findings of fact and law, a completed pre-trial stipulation with witness and exhibit lists, completed mediation and a settlement conference, and fully briefed pretrial motions in limine, this case was on the verge of going to trial during the two-week period beginning January 23, 2017 [D.E. 33].  Plaintiffs' counsel were in the process of readying themselves for trial when, on January 18, 2017, the Court reset the trial date for May 30, 2017.  It was only then, without the prospect of any imminent recovery (and several Plaintiffs already planning to be out of country during the rescheduled trial period), that Plaintiffs accepted Proposals for Settlement set forth by the Defendants that resulted in Final Judgments being

entered.  Pursuant to those Proposals for Settlement (which did not offer any specific amount of compensation for fees and costs incurred), the Court reserved jurisdiction to determine and award Plaintiffs' attorneys' fees and costs.  Therefore, pursuant to the FLSA, the FMWA, and the proposals for settlement themselves, the Plaintiffs are prevailing parties.  As the prevailing parties, the Plaintiffs are lawfully entitled to attorneys' fees and costs.

## II.  PREVAILING PLAINTIFFS

In the United States, the "American Rule" provides that, absent a contrary direction from Congress, the prevailing party in a litigation is not ordinarily entitled to recover attorney's fees from his opponent. Alyeska Pipeline Service Co. v. Wilderness Soc'y, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).  The FLSA, however, explicitly provides that the Court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorneys' fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b).  Thus, fee awards are mandatory for prevailing plaintiffs in FLSA cases. See Kreager v. Solomon & Flanagan, P.A., 775 F.2d 1541, 1542 (11th Cir.1985); Shelton v. Ervin, 830 F.2d 182, 184 (11th Cir.1987) ("Section 216 provides for an award of attorneys' fees, as opposed to granting the court discretion in awarding such fees, to the prevailing plaintiff in FLSA cases.").  This applies as well for the FMWA claims under Fla. Stat. 448.110(6)(c)(1) ("Upon prevailing in an action brought pursuant to this section, aggrieved persons shall recover the full amount of any unpaid back wages unlawfully withheld plus the same amount as liquidated damages and *shall be awarded reasonable attorney's fees and costs*.") (italics added).

There is no question that the Plaintiffs prevailed in this action and are therefore entitled to an award of reasonable attorneys' fees.  The Supreme Court has held that a party is a "prevailing party" for purposes of an attorneys' fee award if the party "succeeded on any significant claim

4

affording it some of the relief sought." <u>Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.</u>, 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989).  Here, the Court entered Final Judgment on behalf of the Plaintiffs under the FLSA and the FMWA, which were the only counts set forth in the Plaintiffs' Amended Complaint.  Although Plaintiffs' counsel believed that Plaintiffs had a substantial chance of recovering more if this case proceeded to trial, the Plaintiffs (who are the ultimate decision makers in the case) decided to accept Proposals for Settlement to ensure prompt monetary compensation for Defendants' FLSA violations, thereby ending this litigation.  Although Plaintiffs could have pursued additional compensation, their decision to accept Proposals for Settlement nevertheless makes them prevailing parties in this case.

## III.    NOVEL CASE

This Complaint concerned a unique scenario and combination of defenses for exotic dancer litigation.  The general history of exotic dancer/strip club litigation has involved adult entertainment clubs' attempts to misclassify dancers as independent contractors to evade the mandatory minimum wage and overtime provisions of the FLSA and state laws.  This case was more egregious, fact intensive, and legally complicated than ordinary independent contractor misclassification disputes.  Here, Defendants did not dispute that the dancers were employees. Rather, the Defendants instead took the position that the dancers were employees and were properly paid wages for all hours worked.  To support this argument, the Defendants created a convoluted and disorganized pay system that Plaintiffs maintain violated federal and state wage laws on numerous levels.  The pay system the Defendants created appeared to serve no purpose other than to attempt to facially portray compliance with federal and state wage laws while, in reality, facilitating the very wage violations Plaintiffs sued upon in this case.  After significant hours of examining hundreds of pages of purported pay records (many of which were

handwritten by unidentified persons other than Plaintiffs, contained apparently forged signatures, and nearly all of which were unsupported by the existence of actual checks demonstrating actual payment to the Plaintiffs in accordance with the purported time records), it became apparent that the Defendants' system did not reflect the reality of hours worked by dancers or wages actually paid by the club to dancers.  Through intensive fact investigation, document comparisons, and deposition testimony, it was ultimately admitted by Defendants that their hour tracking system was false, and did not accurately reflect the actual number of hours worked.  This was further complicated by that fact that: the payroll records provided by Defendants were incomplete or reflected rates of pay that inexplicably varied from paycheck to paycheck; the Defendants fabricated payroll "advances" to dancers that did not actually occur so the Defendants could subsequently pay taxes on those "wages," thus giving the appearance of compliance with tax and wage laws without actually paying any material compensation to the dancers; and the timesheets that allegedly gave rise to the paystubs were often prewritten or preprinted before the dancers' shifts even occurred.  In short, it took substantial amounts of time and analysis for the Plaintiffs' counsel to fully discover and understand the nature of Defendants' scheme and precisely what the Defendants were attempting to accomplish with these false and incomplete records.

As the exotic dancers in this case could not afford to pay the undersigned for representation, the undersigned undertook this fact intensive and novel case on a purely contingent basis.  Even though the Defendants continued to hide the ball in this case, withhold witnesses and documents, and repeatedly change their stories as the case played out, the undersigned remained committed to zealously advocating for Plaintiffs.  The undersigned respectfully submits that this was not a garden-variety FLSA lawsuit where, for example, an employee says they worked hours off-the-clock or did not receive half-time pay.  Instead, this

case involved a series of fact-intensive inquires.  Meeting these defenses took substantial time, and that was by Defendants' design.  Defendants made this case a war of attrition for Plaintiffs, and ultimately caused Plaintiffs to decide to accept the Proposals for Settlement that gave rise to this fee application.

This was not merely a case about the number of hours worked.  Rather, this case rested upon how Defendants' club functions on a daily basis, how these functions directly correlate to the employees that are eligible to participate in the Defendant's tip-pool, how the Plaintiffs were actually paid, and whether the defenses provided (service charges, advances, commissions, tip credit) would apply or offset any payments provided to the Plaintiffs.  Given these issues, this was a case that required substantial resources from skilled employment law litigators to be successful.  Rather than simply dismiss the case early on (as Defendants demanded), Plaintiffs' counsel dug in to this case for Plaintiffs and obtained material benefits for Plaintiffs.  One reason the undersigned were able to do so was because both law firms have been involved in numerous exotic dancer litigation cases in the past, including before this Court.  *See* <u>Dominguez v. Keys Productions, Inc.</u>, Case No.: 15-10224-CIV-MARTINEZ-GOODMAN, D.E. #48 at ¶19 (S.D. Fla. 2015) (approving the undersigned's motion for approval of a $1.2 million dollar class/collective action settlement for exotic dancers, where this Court noted that the undersigned "have significant experience in litigating and settling large wage and hour litigation.").  This knowledge and background was critical to challenging the litany of defenses raised by the Defendants.

In all, this was indeed a novel case, with complex factual and legal issues, against Defendants that were still committing these violations of state and federal law, and who decided to fight the Plaintiffs the entire way.  Yet despite these factors, the undersigned counsel still

accepted this case, proceeded forward, and obtained a Final Judgment that was favorable to Plaintiffs.

## IV.    LITIGATION

After filing suit, the number of Plaintiffs increased from 3 to as many as 10. Subsequently, three Plaintiffs withdrew their claims [D.E. #42, 50, 55], and two were outside the statute of limitations [D.E. #65], leaving a total of five Plaintiffs, each with their own individual claims against the Defendants.  No fees are being sought with respect to Plaintiffs whose claims were withdrawn.

After Plaintiff MANSEL accepted a Proposal for Settlement on August 24, 2016 [D.E. #58], the remaining four Plaintiffs actively litigated this case though discovery and up to the point where the case was scheduled for trial only days later.   Among other things, each Defendant was required to individually respond to Interrogatories, respond to Admissions, produce documents, take part in individual depositions, and personally appear for what amounted to three separate mediation sessions (two Settlement Conferences and a Court Ordered Mediation).    Defendants would not permit representative appearances at any of these conferences.   The undersigned worked with diligence in responding to all discovery requests, scheduling depositions and other appearances, and ultimately the four remaining Plaintiffs timely appeared for everything to which their appearance was required.   Based on Plaintiffs' diligent efforts in responding to discovery, Defendants did not file a single Motion to Compel.

After the discovery phase closed, the Plaintiffs were faced with a fact-intensive and time consuming Motion for Summary Judgment filed by Defendants, while also needing to file their own partial Motion for Summary Judgment with respect to the tip-credit notice.   Opposing Defendants' Summary Judgment motion was particularly time consuming since Defendants

interjected numerous immaterial facts in their Motion for Summary Judgment and its 46-paragraph "Statement of Undisputed Facts" [D.E. 75, pp.1-11] with attached 612 pages of purported record evidence support [D.E. 75-1 through 75-17], each of which required a response even though the vast majority of the allegations were not actually material to the disposition of the motion. Despite the Court not having to ultimately rule on these motions, the motions were extremely taxing and time consuming given the number of issues raised by the Defendants. Plaintiffs spent substantial time on summary judgment briefing (e.g., DEs 76, 77, 78, 87, 88, 89), which undersigned counsel respectfully suggest is evident in the quality of those briefs.

Plaintiffs also respectfully suggest that Defendants purposefully designed their defense of this case as a war of attrition. Defendants raised numerous meritless and/or alternative defenses that made it more difficult, more expensive, and more time consuming for Plaintiffs to litigate, with the hope that Plaintiffs would ultimately give up. Candidly, the Defendants were ultimately successful in causing Plaintiffs to accept Proposals for Settlement in lieu of trial utilizing these tactics. However, while Defendants may have benefited by avoiding trial, they should still have to compensate Plaintiffs' counsel for the substantial time their tactics forced Plaintiffs' counsel to expend.

## V.   FACTORS FOR LODESTAR

The starting point in any reasonable fee determination is the number of hours reasonably expended on the litigation multiplied by the reasonable hourly rate. Hensley v. Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). In determining the reasonable hourly rate, the Court may consider any of the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.1974). Examining several of these factors below demonstrates the Plaintiffs' counsel's lodestar rates.

9

### a.      Time and labor required

The Plaintiffs' counsel have attached an affidavit, declaration, and time sheets detailing the amount of time spent in this case (Exhibit 1-3) and the already-reduced amounts for which they seek recovery.  **Exhibit 1** includes an affidavit and time for attorney Chad E. Levy, which includes reductions in time based upon conferral efforts.  **Exhibit 2** consists of a declaration by attorney Harris Nizel and all time spent by three attorneys at Atherton Law Group, P.A. ("ALG").  **Exhibit 3** includes a small subset of the time in Exhibit 2 for which the attorneys at ALG are seeking recovery and which shows the voluntary deductions ALG has made to expedite this fee request.  As the Court will see, although ALG had three attorneys work on various parts of this case, the firm is only seeking to recover fees for one: attorney Harris Nizel, whose time entries appear on pages 2 through 8 of Exhibit 3.  This necessarily avoids any concern about duplication of effort among different attorneys.  In addition, as shown in red on Exhibit 3 and explained further below, Mr. Nizel has already substantially reduced the amount he is seeking to recover in this matter to avoid seeking redundant and/or excessive hours.

All of the time and labor for which recovery is sought, including pre-suit investigation, Summary Judgment phase, document analysis, legal research, hundreds of communications with opposing counsel and five clients, written discovery, seven (7) depositions, Motions in Limine, Motions to Strike, a Settlement Conference, Mediation, and the completion of a Pre-Trial Stipulation with Exhibit and Witness lists, were all necessary to prevail and recover wages for the Plaintiffs.  The time litigating this case (over eleven months) and the extensive labor set forth, as evidenced by the timesheets, demonstrate that the time and labor expended were necessary in this case.

**b.      Novelty and difficulty of the questions**

Regarding the novelty and difficulty of the question, in Section III above, Plaintiffs addressed the complexity and atypical nature of this particular exotic dancer lawsuit, and without being repetitive, Plaintiffs incorporate those arguments herein.  This case involved unique factual and legal complexities which were presented by Defendants as a moving target throughout this litigation.  As such, Plaintiffs respectfully suggest that this was a novel and difficult case, more akin to a fraud scheme than a typical unpaid wage litigation.

**c.      The skill requisite to perform the legal service properly**

The Plaintiffs' counsel performed their services efficiently and diligently, ultimately resulting in their clients receiving substantial compensation.  "The trial judge should closely observe the attorney's work product, his preparation, and general ability before the court." Id. The undersigned respectfully suggest that this Court examine counsel's work product, preparation, and ability as demonstrated, for example, in filings located at docket entries 76, 77, 86, 87, 88, 89, 98, and 99.  The undersigned litigated this case in a professional and civil matter throughout these proceedings.  This includes timely complying with all orders of this Court and cooperating with Defendants' counsel at all times despite the contentious nature of the proceedings.  Moreover, as explained above, this was not a run-of-the-mill unpaid wage case. This case raised numerous complex issues that were extensively researched and briefed.  In all, Plaintiffs' counsel have demonstrated the skill necessary to provide proper legal representation to the Plaintiffs.

**d.    The preclusion of other employment by the attorney due to the acceptance of the case**

For this factor, the Court is to consider "the fact that once the employment is undertaken the attorney is not free to use the time spent on the client's behalf for other purposes." Id.  While there are two law firms on this case for the Plaintiffs, both are small firms.  Furthermore, only Mr. Levy (a partner) and Mr. Nizel (a senior associate) are seeking recovery of any billable work on this case (with Mr. Nizel seeking a relatively small subset of his billable work).  Considering this case was accepted on a contingent basis (to be addressed in detail below) this type of litigation poses greater risks to small firms because the risk of nonpayment may not be offset so easily by the presence of paying work, and because such paying work may have to be turned away once a contingent case is accepted.  See, e.g., Brewer v. Southern Union Co., 607 F.Supp. 1511, 1532 (D. Colo. 1984).  A case to which a substantial percentage of an attorneys' law practice is devoted is also riskier than an ordinary contingent case.  Craik v. Minnesota State University Bd., 738 F.2d 348, 350-351 (8th Cir. 1984).

In this case, the undersigned chose to proceed on behalf of multiple Plaintiffs, after which even more plaintiffs joined.  As evidenced by the timesheets, affidavit, and declaration submitted herein, counsel were fully devoted to the litigation of this case for each of the Plaintiffs.  During periods when depositions were being taken, when summary judgment briefing occurred, when the pre-trial stipulation was being prepared, and just prior to the originally-scheduled trial date, undersigned counsel were expending nearly all of their available time on this case, as evidenced by attached timesheets.

**e.    The customary fee and whether fixed or contingent**

This was strictly a contingent fee recovery, wherein if the Plaintiffs did not prevail, the undersigned would receive no pay, obviously a circumstance that justifies the lodestar requested.

Attorneys naturally will prefer cases where they will be paid regardless of the outcome, rather than cases where they will be paid only if they win. Cases of the latter type are inherently riskier and an attorney properly may expect greater compensation for their successful prosecution. <u>See Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.</u>, 487 F.2d 161, 168 (3rd Cir. 1973) ("'No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success'"). This contingent fee analysis is important as its very purpose is to help "equalize the access of rich, middle-class, and poor individuals to the courts by making attorney decisions concerning representation turn on an action's merits rather than on the size of a client's income." <u>Stanford Daily v. Zurcher</u>, 64 F.R.D. 680, 685-686 (N.D. Cal. 1974), *aff'd*, 550 F.2d 464 (9th Cir. 1977).

Plaintiffs' counsel were not receiving a fixed amount of any compensation during the course of this case. Their representation is strictly contingent upon the Plaintiffs prevailing in this case. For nearly a year, the undersigned have worked on this case without receiving any compensation, or any assurance that compensation would be paid. Certainly, had the Plaintiffs not prevailed, the undersigned would have worked for this time without any pay. Furthermore, fees for the undersigned counsel never compromised or affected the net recovery of the Plaintiffs, as this issue of fees has not been addressed until it was determined that the Plaintiffs would be paid for their wages. Thus, Plaintiffs' counsel satisfies this factor.

### f.    The amount involved and the results obtained

The five Plaintiffs who were paid received a substantial amount of damages, considering the Defendants initially refused to offer any compensation. While the Plaintiffs stood the chance of recovering more by proceeding to trial, the Plaintiffs opted to take a definite discounted

amount now rather than incur the extended time, disruption, and risk a future trial presented. While undersigned counsel believe there was a substantial chance of a higher recovery at trial in the future, the Plaintiffs (some of whom had previously planned to be out of the country during the period in which the trial was reset) chose to accept judgments now to bring this case to a quicker conclusion in their favor.  The Plaintiffs are all pleased with the results in this case.

> **g.      The "undesirability" of the case**

Regarding the undesirability of the case, it is likely that many attorneys faced with (1) a contingent fee basis, (2) on a case of first impression, (3) with incomplete and complicated records, (4) multiple defenses and legal theories, (5) with no true opportunity for early settlement, and (5) a group of plaintiffs who work in an industry that many view with disfavor would find this case undesirable.  Instead, the undersigned accepted this case, developed the case diligently, conducted themselves professionally, pursued the claims zealously, and ultimately prevailed.

## VI.    LODESTAR RATES

An evaluation of the timesheet and affidavit of Chad E. Levy, Esq. (Exhibit 1), the declaration of Harris Nizel and complete accounting of time expended by three attorneys at ALG (Exhibit 2), and the spreadsheet showing the relatively small portion of the time described in Exhibit 2 for which ALG seeks recovery (Exhibit 3), demonstrates that Plaintiffs' counsel were reasonable both in their prosecution of this case and in their pursuit of attorneys' fees.

Chad E. Levy, Esq. has been practicing labor and employment law for more than eleven (11) years, yet has already litigated over 500 FLSA cases in this district, and is a managing partner of Levy & Levy, P.A.  Levy Affidavit ¶¶5-6 attached hereto as Exhibit 1.  Mr. Levy has litigated on behalf of numerous collective actions pursuant to the FLSA, and has also been

involved in industry changing FLSA collective actions proceedings, through the litigation process and jury trial. Levy Affidavit ¶¶8-9. This case combined Mr. Levy's past experiences. For one, Mr. Levy was primarily responsible for initiating the first ever poker dealer tip pool lawsuit in Florida, for which other tip credit lawsuits followed over the course of the years, through jury trial. Id. Additionally, Mr. Levy has experience with respect to wage and hour litigation in the exotic dancer industry as well. Levy Affidavit ¶12. Mr. Levy has been counsel for exotic dancers in numerous other lawsuits against adult entertainment clubs similar to the one involved here, and had an understanding of what issues might arise in this matter. Levy Affidavit ¶13. When this case turned into one involving a tip-pool/tip-credit at an adult entertainment club, this combined Mr. Levy's extensive knowledge of tip-credit with that of the exotic dancer industry. Levy Affidavit ¶¶11, 14. This is supported by two recent orders both recognizing Mr. Levy for his substantial experience litigating large wage and hour cases, in both the exotic dancer industry, and in tip-credit litigation. *See* Demaria-Dominguez v. Keys Productions, Inc., Case No.: 15-10224-CIV-MARTINEZ-GOODMAN (S.D. Fla. 2015) ($1,200,000 class-action settlement in exotic dancer case); Jordan, et. al. v. South Florida Racing Association, LLC, Case No.: 16-CV-21893-GAYLES (S.D. Fla. 2016) ($100,000 class-action settlement in tip credit case). Levy Affidavit ¶¶10, 12. During the course of this litigation, Mr. Levy expended 167.5 hours in securing judgment for the Plaintiffs, as detailed in the time records Mr. Levy has submitted in support of this application. Levy Affidavit ¶19. This includes a reduction of 13.1 hours based upon conferral efforts with Defendants. Id. Notably, Mr. Levy did not bill for any paralegal time, nor was any time included for five plaintiffs that did not ultimately receive compensation. Levy Affidavit ¶20. Based upon his experience and handling of this specific case, Mr. Levy respectfully requests an hourly rate of $350.00.

Three different attorneys at ALG expended time in this case.  Nizel Declaration ¶¶6-7 attached hereto as Exhibit 2.  However, ALG is voluntary reducing the hours for which recovery is sought to only a portion of the actual time worked.  Specifically, no recovery is being sought for Scott Atherton, Esq., the managing shareholder of ALG, even though he expended 61.4 hours in this case.  See Nizel Declaration ¶8 and the reductions show in Exhibit 3.  Likewise, no recovery of time is being sought for associate attorney Brittany Tarazona, Esq., who worked 89.8 hours on this case.  Nizel Declaration ¶8.  Instead, to avoid any duplicative time, ALG only seeks recovery of time spent by attorney Harris Nizel, Esq., who did the bulk of the legal work involved in the factual investigation/discovery, legal research/analysis, and briefing in this case.  Additionally, Mr. Nizel seeks recovery of only 57% of the time he actually spent on this case so as to avoid protracted disputes over the amount of fees sought by ALG. See Exhibit 3.

Harris Nizel, Esq. has been continually admitted to practice law in the State of Florida for nearly thirteen (13) years.  Nizel Declaration ¶2.  He graduated from the University of Pennsylvania with a Bachelor of Arts in 1997 and thereafter graduated *summa cum laude* from Nova Southeastern University Law School in 2004.  Nizel Declaration ¶3.  He achieved the highest score on the bar examination within the geographic area encompassing the Fourth District Court of Appeals (including, but not limited to, Broward, Palm Beach, and St. Lucie counties) when he took the exam.  Id.  After graduating law school, Mr. Nizel practiced at Greenberg Traurig, P.A. and later decided to focus his practice on trial work by joining the Broward County Public Defender's Office where he handled thousands of cases and took part in dozens of trials for indigent clients.  In 2012, Mr. Nizel went back to civil practice and joined ALG where his practice focuses on complex civil litigation with an emphasis on employment law.  See Nizel Declaration ¶2.  Since that time, Mr. Nizel has handled dozens of employment

cases, including many wage and hour disputes.  It is respectfully suggested that Mr. Nizel's skills are evident in the legal briefing submitted by Plaintiffs in this case, for which he was the primary drafter.

During the course of this litigation, two other attorneys at ALG worked on this case.  No recovery of fees is sought for time expended by Mr. Atherton (61.4 hours) or for Ms. Tarazona (89.8 hours).  They each made valuable contributions in this action (Mr. Atherton from a partner level and Ms. Tarazona as an associate), but no fees are being sought for them because the work product, research, fact investigation, and briefs to which they contributed were primarily handled by Mr. Nizel.  Moreover, while Mr. Nizel expended a total of 468.8 hours in this case, ALG only seeks recovery for 264.2 of those hours (a voluntary reduction of approximately 43%), which reflects an effort on ALG's part to focus this fee petition on clearly and reasonably compensable work.  Based upon his experience and handling of this specific case, we respectfully submit that Mr. Nizel is deserving of an hourly rate of $300.00.  See Declaration of Harris Nizel and Timesheet for all work done by Atherton Law Group, P.A. attorneys (**Exhibit 2**) as well as a spreadsheet showing the specific time (and the voluntary reductions) for which Mr. Nizel seeks recovery in this case (**Exhibit 3**).

The figures for Mr. Levy and Mr. Nizel are more than reasonable within the marketplace for hourly attorney rates.  See e.g., CC-Aventura, Inc. v. Weitz Co., LLC, 2008 WL 276057 at *2 (S.D. Fla. 2008) ($400.00 was reasonable for attorney with eight years experience, while $200.00 was reasonable for attorney with one year experience).  Both timekeepers seeking recovery of fees are experienced attorneys and demonstrated that experience in this case.

Plaintiffs anticipate that Defendant may file a response to this application.  Plaintiffs note that any and all time incurred by the undersigned in filing, preparing and litigating this fee

application, and any fee hearings thereon, is compensable.   A prevailing party is entitled to reasonable compensation for time reasonably spent in litigating the fee petition.   <u>Martin v University of South Alabama</u>, 911 F.2d 604,610 (11th Cir.1990); <u>Jonas v Stack</u>, 758 F.2d 567, 568 (11th Cir. 1985); <u>Johnson v. University College of Univ. of Ala. in Birmingham</u>, 706 F.2d 1205, 1207 (11th Cir. 1983).   Plaintiffs therefore reserve the right to file a supplemental fee application if warranted based on the manner in which Defendants respond to this motion.   <u>See Villano v City of Boynton Beach</u>, 254 F.3d 1302, 1309-10 (11th Cir. 2001) (District court erred in not considering fee supplements after initial fee motion).

Overall, this case required the combined experience and skill from both law firms to secure a favorable judgment for the Plaintiffs.   The undersigned counsel have only billed what was reasonably necessary (and have sought recovery for less time than was actually necessary) to effectively prepare and ultimately prevail in this matter.   The attorneys did not include any billing time for the plaintiffs who did not receive judgments.   The fact that numerous attorneys were working and billing this case should not have any effect on each other's hours, particularly since recovery is only being sought for time expended by two attorneys whose work was not duplicative.   Simply stated, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer."   <u>Norman v. Housing Auth. City of Montgomery</u>, 836 F.2d 1292 (11th Cir. 1988). As a result, these calculations result in a lodestar figure of $58,625.00 for Mr. Levy and $79,260.00 for Mr. Nizel.

**VII.   LOCAL RULE 7.3(a) COMPLIANCE CERTIFICATION**

In accordance with S.D.L.R. 7.3(a), Plaintiffs' counsel provides the following:

(i)      A Judgment dated March 3, 2017 was entered on March 6, 2017 [D.E. 126], and this Motion is being filed on or before May 3, 2017;

(ii)    The Plaintiffs are entitled to reasonable attorneys' fees as a prevailing party in this matter pursuant to Section 216(b) of the FLSA and the agreement of the parties as contained in the accepted proposals for settlement [D.E.s 58, 116 through 119, and 121 through 124]. Plaintiffs shall also be entitled to reasonable attorneys' fees as a prevailing party in this matter pursuant to Fla. Stat. §448.110(6)(c)(1) of the FMWA;

(iii)   The affidavit/declaration of attorneys' fees are attached hereto as Exhibits 1-3, evidencing $58,625.00 for Mr. Levy and $79,260.00 for Mr. Nizel, for a total of $137,885.00 in fees;

(iv)    The agreement between the Plaintiffs and the undersigned states that Plaintiffs understand "that courts may award attorneys' fees to the client in employment-related matters such as this case";

(v)     The affidavit, declaration, and timesheets from Exhibits 1-3 evidencing 167.5 hours for Chad E. Levy, Esq. at $350.00 per hour and 264.2 hours for Harris Nizel, Esq. at $300.00 per hour;

(vi)    There are no non-taxable costs being sought by the Plaintiffs;

(vii)   This motion and its attached affidavit and declaration have been verified; and

(viii)  The undersigned certify that a good-faith effort was attempted to agree upon the reasonable attorneys' fees. Specifically, Plaintiffs provided Defendants with a draft motion, all time sheets, and an affidavit and declaration on April 3, 2017. Defendants did not object to the hourly rates sought in this motion, but responded with itemized objections, to which Chad E. Levy, Esq. reduced his hours by 13.1 hours. Defendants contest multiple entries as being excessive or duplicative, and argue that Plaintiffs are not entitled to recovery of fees for hours after December 9, 2016.

## IX.    CONCLUSION

Plaintiffs respectfully request an award of attorneys' fees in the amount of $58,625.00 for

Chad Levy, Esq. of Levy & Levy, PA, and $79,260.00 for Harris Nizel, Esq. of the Atherton

Law Group, P.A.

## <u>VERIFICATION</u>

Under penalties of perjury, we declare that we have read the foregoing and that the facts stated

herein are true and correct.

Respectfully submitted,

| | |
|---|---|
| **LAW OFFICES LEVY & LEVY, P.A.** | **ATHERTON LAW GROUP, P.A.** |
| 1000 Sawgrass Corporate Parkway, #588 | 224 Datura St., Suite 815 |
| Sunrise, Florida 33323 | West Palm Beach, FL 33401 |
| Telephone: (954) 763-5722 | Telephone: 561.293.2530 |
| Facsimile: (954) 763-5723 | Facsimile: 561.293.2593 |
| | |
| */s/ Chad E. Levy* | */s/ Harris Nizel* |
| Chad E. Levy, Esq. | Harris S. Nizel, Esq. |
| Florida Bar No.: 0851701 | Florida Bar No.: 807931 |
| chad@levylevylaw.com | Harris@AthertonLG.com |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 2, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

/s/ *Harris Nizel*
HARRIS S. NIZEL

## SERVICE LIST

Edilberto O. Marban, Esq.
THE LAW OFFICES OF
EDDY O. MARBAN
1600 Ponce De Leon Boulevard, Suite 902
Coral Gables, Florida 33134
Telephone: (305) 448-9292
marbanlaw@gmail.com
*Counsel for Defendant*

Chad Levy, Esq.
Florida Bar No.: 0851701
LAW OFFICES LEVY & LEVY, P.A.
1000 Sawgrass Corporate Parkway, #588
Sunrise, Florida 33323
Telephone: (954) 763-5722
Facsimile: (954) 763-5723
chad@levylevylaw.com
*Co-Counsel for Plaintiffs*